NEW-YORK,<br>Nov. 1806.<br><br>Lansing and Lansing<br>v.<br>Turner and Strafford.

Judgment reversed.

(*a*) " You swore false at the trial of your brother John,".was held in Massachusetts to be actionable after verdict, *without averring that the words were spoken concerning the testimony given by the plaintiff at the trial referred to.* Ferole v. Robbins, 12 Mass. 498. And in North Carolina to say of another, " you swore false *in Court*," is actionable. Hamilton v. Dent, 1 Mayw. 116.

## Lansing and Lansing *against* Turner and Strafford.

THIS was an action on the case, for a breach of contract, in not delivering to the plaintiffs, in a good and marchantable condition, a certain quantity of beef, purchased by them, of the defendants. The cause was tried, at the *Rensselaer* circuit, in 1806, before Mr. Chief Justice *Kent*.

On the trial, a bill of parcels of the beef, and a receipt of payment in full given by the defendant the 5th *January*, 1805, was proved. It appeared in evidence, that the contract for the beef was made in the autumn of 1804, and was to remain in the possession of the defendant, until it was sent by the plaintiff to the city of *New-York*.

A agreed to sell B a certain quantity of beef, and a short time after gave him a bill of parcels, and B paid the purchase money in full, and it was agreed, that the beef should remain in the custody of A, until it should be sent to New-York. Seven or eight months after, B received a

part, which proved to be bad, and the whole was found, on inspection, to be unmerchantable. In an action brought by B for the non-delivery of good and merchantable beef, it was held, that on the payment of the purchase money, the property was transferred from the vendor to the vendee, and it remained in the custody of the vendor at the risk of the vendee ; and that, as the beef was good at the time the money was paid, the vendee must bear the loss of its subsequent deterioration.

NEW-YORK, Nov. 1806.

Lansing and Lansing
v.
Turner and Strafford.

[ * 14 ]

The beef was put up in the autumn of that year, and was well salted and packed. In the spring or summer of 1805, one of the plaintiffs requested one of the defendants to let the beef remain some time longer, as the plaintiffs had no convenient place in which to store it. In [*]*May*, 1805, one of the defendants told the plaintiffs that the beef was in good order.

An *inspector* of beef testified, that in *October*, 1805, he inspected, at the request of the plaintiffs, 20 barrels of beef, lying on the dock of the defendants, which had been sent to *New-York* by the plaintiffs, and returned; that the beef was unfit for market; and he examined several barrels of the residue, lying in the slaughter-house of the defendants, and found it unfit for market. *Turner*, one of the defendants, was present at the examination, and the plaintiffs offered to take the beef, and pay for it, according to the contract, if he would say it was merchantable. *Turner* said the beef was ready for delivery, and had been for some time, and was well put up.

The 20 barrels inspected were taken by the plaintiffs from the defendants, about the 20th of *August*, 1805, and sent to *New-York*, but was returned as unmerchantable. The inspector thought the extreme heat of the season had spoiled the beef. Both parties offered to pay the inspector.

The judge charged the jury, that by the agreement, the defendants were bound to deliver the beef, in a good merchantable order, at any time when the plaintiffs called for it; that the defendants might, at any time, have put an end to their liability, by giving notice to the plaintiffs to take the beef away. That though they had given notice that the beef was ready, and requested the plaintiffs to take it away, prior to the 20th of *August*; yet as they had not shown when the notice was given, the jury ought to fix it as near the 20th of *August*, as the

could, being the time when the 20 barrels were received; that as the beef was not merchantable in *October*, 1805, it was to be presumed, that it was not so when the plaintiffs were requested to take it ; that if the jury should be of this opinion, they might find a verdict for the plaintiffs, for the price of the beef, with the interest, from thetime the money was paid ; or if the jury should be of opinion, that the first tender was waived by the defendants, and that the tender was to be considered as made in *October*, then they should find for the plaintiffs the amount. The jury found a verdict for the plaintiffs for $1370, being the whole amount.

A motion was now made to set aside the verdict, and for a new trial. 1st. Because the verdict was 'against law and evidence. 2d. For the misdirection of the judge. 3d. Because the damages were excessive.

*Russell and Foot*, for the defendants. On the 5th *January*, 1805, when the bill of the beef was delivered to the plaintiffs, and payment made by them, there was a complete sale, and the property became vested in the plaintiffs. The defendants were, afterwards, mere bailees for safe keeping ; and the only ground of action against them, would be for negligence in this respect.* Still, if there was no sale on the 5th of *January*, there was a complete sale and delivery on the 20th of *August*, when the plaintiffs received 20 barrels of the beef; for delivery of a part, is tantamount to a delivery of the whole. If the property was sold, and delivered to the plaintiffs, no action can be maintained for the *non-delivery* of the beef. The plaintiffs should have brought their action, either on a warranty or fraud in the sale. An action for money had and received, would not lie,† though the plaintiffs might bring *trover*. Admitting, however, that the plaintiffs were entitled to recover, in this form of action, the damages were excessive, for the jury have as-

*Blk. Com. 448, 449, 2 Caines 38, Hun & others, v. Bonew, 2 Caines 156. Seldenv. Hickacock.

† Cowper 818, ower v Wells.

NEW-YORK, Nov 1806.

Lansing and Lansing v. Turner and Strafford.

[ *16 ]

sessed the damages to the whole amount, though twenty barrels had been actually received by the plaintiffs.

*Woodworth* and *Allen*, contra. The contract was for the sale of good and merchantable beef; there was no time fixed for delivery. The defendants were bound to deliver it, at any time when the plaintiffs called for it.

There was no actual delivery at the time the money was paid, and whatever may be the legal effect of such payment, the circumstances of this case will exempt it from [*] the operation of the general rule. When the 20 barrels were returned, both parties agreed to have them inspected; this, as well as the repacking and tendering it, shows that the defendants did not consider it as delivered at the time the money was paid. The charge of the judge was correct; for if the time of the tender was not shown, it was right to presume it to have been near the 20th of *August*. It was necessary to make the tender; it was also requisite, that the beef should be merchantable, when tendered; and it was fairly left to the jury to infer, whether it was good at the time. If it was bad in *August*, it must have been so some time before, or near the 20th of *August*. Besides, by agreeing to the inspection, the tender was waived; but if the agreement was to keep the beef, until the plaintiffs called for it, the defendants could not exonerate themselves from their obligation by a tender.

THOMPSON, J. delivered the opinion of the court.

The principal question in this case, is, whether, in judgment of law, there was a delivery of the property. The purchase was made in the autumn of 1804; and the consideration money paid the following *January*, at which time, there is little or no doubt, that the beef was in good order. It remained, however, in the actual possession of the defendants, until the succeeding summer, when it was found to be damaged; and on whom the loss

ought to   fall, is   now   the   point   in   dispute.   The pro-
perty  in   the   beef  was   so far  transferred, on   the pay-
ment of the consideration money, that   it must be consi-
dered as remaining at the plaintiff's risk.   *Blackstone*, in
his Commentaries, lays down the rule generally,   that a
bargain   struck,   and   payment of the purchase money,
vests the property of the chattel in the vendee.    To il-
lustrate his rule, he   puts   the case  of a   horse, dying in
possession   of the   vendor,   after the payment of   the con-
sideration, and the loss he   says must fall on the vendee.*
This, I apprehend to be the rule in all cases,  on the sale
of a specific chattel,   where   the   identity   of the article
cannot be controverted.    The inference of   law being,
that a vendor is a mere [*] bailee, retaining the  posses-
sion at the request of the vendee.    The sale is not exe-
cuted so as to vest the property in the vendee, without an
actual, or a presumed delivery, and the latter is to be in-
ferred from circumstances ; as where there is a designa-
tion of the goods by the vendor to the use of the vendee,
the marking them, or making them up for delivery, the
removing them for the  purpose of being  delivered, and
the like.   (1  *H. Black.* 363.)   In the present case, there
is no controversy respecting the identity or  designation
of the beef sold, nor does it appear  but that the plain-
tiffs purchased the  whole  which the defendants had in
their store-house.    The only testimony respecting the
delivery, was that of *James Giles*, who swore, that at the
time the money was paid for the  beef, he  understood it
was to  remain  in the defendant's slaughter-house until
it was shipped to *New-York*.    Under these circumstan-
ces, I should suppose, that the inference of law would be,
that it was at the risk of the  vendee with  respect to fu-
ture damage, unless occasioned by the gross negligence
of the vendor.    If there was a delivery, the present action
tion is not maintainable, it being founded on a  supposed
breach of contract, for  non-delivery.    But we are not

authorised by the case, to direct a nonsuit to be entered. We can therefore, only award a new trial, with costs, to abide the event of the suit.

