## PARSONS *vs.* WEBB.

Where one delivered his horse to a private agent, to be sold for the owner's benefit, and the agent sold him to his own creditor, in payment of his own debt;—it was held that the owner's property was not thereby devested, and that he might maintain replevin for the horse, even against a subsequent vendeé.

THIS was an action of replevin of a horse; and was tried before *Weston J.* upon the issue of property in the plaintiff. It appeared that the plaintiff had delivered the horse to one *Read,* his son in law, to sell for him; and that *Read* had turned out the horse in payment of a debt he owed to one *Gilman,* who had sold him to the defendant.

The counsel for the defendant contended that whatever might be the finding of the jury upon the question of property, yet as the de-

Parsons v. Webb.

fendant had bought the horse of a person who was the apparent owner and whom he had reason to believe to be the real owner, the plaintiff could not maintain this action without proof of a previous demand of the horse from the defendant. But this point the Judge overruled, and instructed the jury that if they were satisfied that *Read* had authority to treat the horse as his own, and to dispose of him at pleasure, the title of the plaintiff had been devested ; but that if his authority was merely to sell the horse for the plaintiff, it would not justify him in turning him out for the payment of his own debt.

The verdict, which was for the plaintiff, was taken subject to the opinion of the Court upon the correctness of the Judge's instructions.

*Boutelle,* for the defendant, waived the point of demand, which had been taken at the trial. But he contended that though an agent with limited powers could not bind his principal beyond them, yet that where, as in the present case, a loss must fall on one of two innocent persons, by the fault of a third, it ought to fall on him who, by entrusting the third person, had enabled him to do the wrong. *Hearne v. Nichols,* 1 *Salk.* 289 ; *Parsons v. Armor & al.* 3 *Pet.* 428 ; *Schimmelpenninck v. Bayard & al.* 1 *Pet.* 290. And he likened it to the case of a factor, allowed to deal as owner of the goods, in which case, the buyer may set off against the owner, his private demand against the factor. *George v. Claggett & al.* 7 *D. & E.* 359 ; *Moor v. Clementson,* 2 *Campb.* 22 ; *Paley on Agency,* 253—257 ; *Baring v. Corrie,* 2 *B. & A.* 137 ; *Kelley v. Munson,* 7 *Mass.* 319.

*Sprague,* for the plaintiff, cited *Kinder v. Shaw,* 2 *Mass.* 398 ; *Odiorne & al. v. Maxcy,* 13 *Mass.* 178 ; *Jarvis v. Rogers, ib.* 105 ; *Banorgee v. Hovey,* 5 *Mass.* 11 ; *Kingman v. Pierce,* 17 *Mass.* 247 ; *Paley on Agency,* 250, 32, 33, 35 ; *Copeland v. Merchant's Ins. Co.* 6 *Pick.* 198 ; *Jones v. Farley,* 6 *Greenl.* 226.

The opinion of the Court was read at the ensuing *September* term, as drawn up by

MELLEN C. J. Under the instructions given to the jury, they have, by their verdict in favor of the plaintiff, decided that *Read*

had not authority from him to dispose of the horse as he pleased and treat him as his own. The question then is whether the last instruction of the Judge was correct, namely, that if the authority given to *Read* was to sell the horse for the plaintiff, it would justify him in turning him out for the payment of his own debt. Most of the authorities cited by the defendant's counsel have reference to the effect of sales made by factors and brokers, under that general authority with which they are clothed.——" A factor, who has possession of goods, differs materially from a broker. The former is a person to whom goods are sent or consigned; and he has not only the possession, but in consequence of its being usual to advance money upon them, has also a special property in them and a general lien upon them. But the case of a broker is different; the rule stated in the case in *Salkeld* must be taken with some qualifications; as for instance, if a factor, even with goods in his possession, acts beyond the scope of his authority, and pledges them, the principal is not bound; or if a broker, having goods delivered to him, is desired not to sell them, and sells them, but not in market overt, the principal may recover them back. The truth is that in all cases, excepting where goods are sold in market overt, the rule of *caveat emptor* applies." *Baring v. Corrie,* 2 *Barn. & Ald.* 148, 149. So in *Pickering v. Burk,* 15 *East.* 43, 44, Lord *Ellenborough* says, when speaking of the authority of a broker, "If the principal send his commodity to a place where it is the ordinary business of the person to whom it is confided to sell, it must be intended that the commodity was sent thither for the purpose of sale : If the owner of a horse send it to a repository of sale, can it be implied that he sent it thither for any other purpose than that of sale ? Where the commodity is sent in such a way, and to such a place as to exhibit an apparent purpose of sale, the principal will be bound and the purchaser safe." *Read* cannot be considered in the light of a commercial factor or as a broker. He was merely a private agent for a particular purpose; and the instruction to the jury was, that an authority from the plaintiff to sell the horse for him, did not authorize him to turn him out in payment of his own debts. If a broker cannot pledge the principal's goods for his own debt, not

being within the scope of his authority, can it be within the scope of a private agent's authority to pledge or give away the principal's horse, or pay one of his own debts with it?

If a man should sell another's horse without any authority, the sale or act is merely void. If he is authorized to sell him to a particular person or at a limited price, can he sell him to another person for one half the limited sum? It is said the purchaser has been deceived; so has the plaintiff. It is said the plaintiff has reposed that confidence, which has been abused to the defendant's injury; true, and has not the defendant also reposed confidence unwisely? The mere possession of the horse gave *Read* no right to sell him; and therefore the defendant should have ascertained what authority had been given to *Read* by the plaintiff. To adopt the reasoning of the counsel for the defendant, would be to deprive a principal of the power over his own property, if entrusted to the hands of an agent for sale; and leave him at the mercy of those who are disposed to injure him. The grounds of public policy, as applicable to the commercial transactions to which we have alluded, cannot be considered as supporting the defendant's motion. In the case of *Fenn & al. v. Harrison & al.* 3 *D. & E.* 757, the distinction between a general and a special agent is clearly stated. *Ashurst J.* says: "If a person, keeping a livery stable, and having a horse to sell, directed his servant not to warrant him, still the master would be liable on the warranty, because the servant was acting within the general scope of his authority; and the public cannot be supposed to be conusant of any private conversation between the master and the servant; but if the owner of the horse were to send a stranger to a fair, with express directions not to warrant the horse, and the latter acted contrary to the orders, the owner would not be liable on the warranty, because the servant was not acting within the scope of his employment." *Buller* and *Grose* Justices, rely on the same distinction. See also *Ward v. Evans*, 2 *Salk.* 442; *East India Company v. Hensley*, 1 *Esp.* 112; *Hicks v. Hankin*, 4 *Esp.* 114; *Sugden*, 27; *Batty v. Carswell*, 2 *Johns.* 18; *Hooe v. Hancock*, 1 *Wash.* 23. Under the instructions which the jury received, they have found that *Read* was a mere agent, specially authorized to sell

the horse for the use and benefit of the plaintiff; instead of doing; which, he has paid his own debt with it; thus clearly acting beyond the scope of his authority.—There must be

Judgment on the verdict.