WILLIAM FREEMAN, JR., *vs.* WILLIAM UNDERWOOD *et al.*

Washington, 1874.—January 30, 1877.

*Trover. Lease.*

The defendants, having purchased and received the possession of a quantity of wild berries from persons who picked them from the plaintiff's land as trespassers, thereby assumed an ownership and exercised a dominion over the property, that renders them liable in trover to the plaintiff without any demand therefor; although they purchased the same in good faith and in ignorance of the want of title in their vendors.

An instrument from the owner of the land to the plaintiff, granting him all the timber, grass, and berries that may be found or grown upon the land for a term of years and giving him possession for the purpose of managing and enjoying the property granted, is valid between the parties; and entitles the plaintiff to sue in his own name for any of the productions of the land unlawfully taken during his term by strangers therefrom.

ON EXCEPTIONS.

TROVER, for 1500 bushels of blueberries picked by trespassers in 1871, on wild lands leased to the plaintiff and by them sold to the defendants at their canning factory at Jonesport.

*Plea,* not guilty, with a brief statement that the plaintiff did not own the blueberries nor the land from which they were picked and never had possession of the same; that the blueberries did not come from the plaintiff's land.

The plaintiff put in a conveyance of certain lands to his wife, and then, subject to the defendant's objection, an instrument variously termed a "bill of sale," and a "lease" and operating as both, from her to himself, which he testified that his wife signed and which was of the following tenor :

"In consideration of ten dollars, to me in hand paid, by William Freeman, jr., of Cherryfield and for other good and valuable consideration, hereinafter mentioned, I hereby sell, transfer and make over to him all the wood and timber of every description now standing and growing upon all the wild lands which I have and hold in the county of Washington, together with the grass, cranberries, blueberries and all other fruit, if any, which may be found or grown thereon for the space of ten years from the date hereof. By these presents giving him and his assigns full power and authority to enter said lands for the purpose of enjoying the

property herein sold and conveyed, and to control and manage the same as he may see fit. And for the further consideration and upon condition that he shall pay the taxes assessed upon said lands, and use the net rents and profits of said property for our mutual benefit and for the benefit, comfort and happiness of his children. Witness my hand and seal, and dated at Cherryfield, the 12th day of April, A. D. 1871.　　　　　Sophia T. Freeman." (Seal.)

A letter from the plaintiff to the defendants, of the following tenor, was in evidence.

"Cherryfield, Aug. 12, 1871.

Messrs. Wm. Underwood & Co.

Gents : I understand you are "packing" large quantities of blueberries taken from Deblois and township No. 18, chiefly. My object in writing is to inquire whether you will be accountable and pay a fair rent for the blueberries you now have on hand, or will purchase this season, picked upon said lands, viz : No. 18, M.D. 18,000 acres in Deblois ; 14,000 acres in Cherryfield ; about 9000 acres in No. 19 ; part of Columbia and township No. 24 ; in all about 70,000 acres of land ; in all which I represent, and covers 99-100 of the blueberry ground in this part of the state.

The blueberry trade has got to be one of the staple articles of business in this section of the state, affording a livelihood to thousands of people a portion of the year, and has become a source of profit to you and others. In the town of Deblois and Cherryfield, which is the chief blueberry ground, I have lost $40,000 in the destruction of timber alone, since I have had control of that property by blueberry pickers annually setting fires in order to make new blueberry ground. Every year hundreds of teams go upon my land without liberty, build their huts, and camps and hotels, turn their horses upon my meadows, cut down tons of grass for their teams, fairly imposing upon my good nature and kindness, while I pay heavy taxes for their benefit, and they reap all the profit and I receive nothing. We are not able to put up with it any longer and must take that course which will accomplish the object in the speediest and most effectual manner. The berries you have are the property of those I represent, unless possibly a small portion of them which are picked elsewhere. If you will

agree on receipt of this to pay a trifling compensation for these berries, I will give you and your pickers liberty to pick upon these grounds. If you neglect or refuse to do so we shall be obliged to take the berries or hold you accountable for their value; and in order to save our rights, I now make a demand upon you for all the blueberries now in your possession belonging to the proprietors of the foregoing lands, and notify you that you must not hereafter purchase berries or other property belonging to said proprietors without liberty, or of those who have liberty to take them.

We are not disposed to exercise the rights we have to extort money from you, or take the slightest advantage of you.

If our rights are respected you can easily make some satisfactory arrangement with said proprietors through me, that will be to the mutual advantage of all concerned.

The public cannot complain, as within    years they have been notified.  A copy of the last notice I enclose you."

The plaintiff testified, subject to the defendants' objection, that he took possession of the property under the lease, and that he continued in possession, and, on cross-examination, that he took possession of the land and everything there was on it; that he had given people permission to go upon it and pick blueberries, and cut timber; that he took possession of the land as soon as he received that document; that he was at his home in Cherryfield when he received it; that he took no possession of the property other than to take that instrument; that the property that grew upon the land belonged to him; that the land stood as it was before; that he did not go up to the land on the 12th of April to take possession of any blueberries; that he never had any of the berries sued for after they were severed from the soil.

There was testimony tending to show that some 735 bushels of blueberries were taken from the lands covered by the conveyance of Mrs. S. T. Freeman to the plaintiff, by various persons without permission from the plaintiff, and sold to the defendants at their factory at Jonesport, at a price of from five and a half to seven cents per quart.

The presiding justice instructed the jury that the demand, in the plaintiff's letter of August 12, 1871, would cover not only

the blueberries that had been received up to that time, but others that might be received during that year; that if he took possession of the premises, he took possession of the berries whether they were grown or not; if he took possession of the land, he took possession of everything that grew on it, the leaves, and trees and berries, everything in the earth, and everything below it and everything above it.

The verdict was for the plaintiff for $1176; and the defendants alleged exceptions.

*G. Walker,* for the defendants, contended that the letter of August 12, was, on the part of the plaintiff, a virtual disclaimer of ownership on his part, either general or special, and that never having had possession he could not maintain trover; and that it was necessary for the plaintiff to show that, at the time of the demand, the defendants had the property in possession and ability to surrender that possession to the plaintiff; citing *Davis* v. *Buffum,* 51 Maine, 160; *Carleton* v. *Lovejoy,* 54 Maine, 445.

*W. Freeman, jr., pro se,* stated in explanation of his letter of August 12, that though it did claim that the plaintiff represented other owners as well as himself, yet that the ownership in fact was several and not joint; that he in fact represented one O. S. Tibbetts, owner of townships Nos. 18, 19 and 24, but that in this action the declaration and the evidence was confined to his own separate property.

He also contended, that there being a tortious taking and an actual conversion, no demand was necessary, and cited *Thurston* v. *Blanchard,* 22 Pick. 18; *Pierce* v. *Benjamin,* 14 Pick. 356.

This principle holds good where the action is against an innocent purchaser. *Carter* v. *Kingman,* 103 Mass. 517. *Riley* v. *Boston Water Power Co.,* 11 Cush. 11.

PETERS, J. A question raised by the defendants is, whether the demand made upon them by the plaintiff for the berries was sufficient. The answer is, that no demand was necessary. The persons who picked the berries from the land in plaintiff's possession, were trespassers. They sold the berries to the defendants. The defendants received them at their factory for the purpose of "can-

ning" them, as it is termed. The berries were of a rapidly decaying character, requiring immediate use, undoubtedly received from time to time, and it would have been quite impracticable to redeliver the property to the plaintiff, had he duly demanded the same. But the defendants, by their purchase and possession of the berries, although acting in good faith and in ignorance of the want of title in their vendors, assumed thereby an ownership and exercised a dominion over the property, which rendered them liable in trover to the true owner without any demand therefor. The following are some of the cases directly pertinent to this point. *Galvin* v. *Bacon*, 11 Maine, 28; *Porter* v. *Foster*, 20 Maine, 391; *Hotchkiss* v. *Hunt*, 49 Maine, 224; *Stanley* v. *Gaylord*, 1 Cush. 536; *Riley* v. *Boston Water Power Co.*, 11 Cush. 11; *Gilmore* v. *Newton*, 9 Allen, 171; *Bearce* v. *Bowker*, 115 Mass. 129.

The defendants also deny that the writing to the plaintiff from his wife conferred any right of action upon him, so that he could sue for the berries in his own name. But we think it clear that the writing amounts to an executory sale of the blueberries, which would make them his when picked from the bush, or perhaps when merely grown; the writing also combining with the sale a lease of the land, which gave to the plaintiff a sufficient estate for the growing and supporting of the successive annual yields of berries thereon. This transaction was valid between the parties thereto as against all strangers. When the berries were taken from the bush by unauthorized persons, they were the property of the plaintiff. As to this point, see the following authorities: *Cutler* v. *Pope*, 13 Maine, 377; *Trull* v. *Fuller*, 28 Maine, 545; *Farrar* v. *Smith*, 64 Maine, 74; *Stearns* v. *Washburn*, 7 Gray, 187; *Douglas* v. *Shumway*, 13 Gray, 498; *Claflin* v. *Carpenter*, 4 Met. 580; *Lamson* v. *Patch*, 5 Allen, 586; *Drake* v. *Wells*, 11 Allen, 141. See also Wash. Real Prop., vol. 1, book 1, c. 1, on the nature and classification of real property.

*Exceptions overruled.*

APPLETON, C. J., WALTON, DICKERSON, BARROWS and VIRGIN, JJ., concurred.