### GOULD *v.* BLODGETT.

If an agent, for the sale of a chattel, delivers it to his creditor in payment of his own preëxisting debt, the owner may maintain trover against the creditor without a previous demand.

The unauthorized delivery of the property by the agent to his creditor in payment of his own debt is not a sale; and bringing an action of assumpsit against the creditor for the value of the property by the owner is not a ratification of the unauthorized delivery, nor a conclusive election of remedy.

Bringing an action of assumpsit in such a case is a misconception of the remedy, and not an election of remedies such as will bar a subsequent action.

A ratification of an unauthorized act of an agent, to be binding upon the principal, must be made or founded upon a knowledge of all the material facts and circumstances affecting the interests of the principal.

ASSUMPSIT, for the price of a horse-rake. The plaintiff asked leave to amend, by filing a count in trover for the rake. Facts found by a referee. The plaintiff was agent of Stoddard & Co., of Dayton, Ohio, for the sale of rakes, which were billed to him at $24 each, at Boston, to be sold by him at such prices as he could get above cost; and all rakes were to remain the property of Stoddard & Co. until paid for by the plaintiff, in cash or guaranteed notes; and all notes and accounts for the sale of the rakes were to be the property of Stoddard & Co. until paid. In June, 1879, the plaintiff made one Quimby his agent to sell rakes, under a verbal contract that he should have one half of what the rakes sold for above what they cost the plaintiff, and should not sell for less than $30 each; and might sell on credit, taking good notes running to Stoddard & Co., which were to be turned over to the plaintiff

when obtained. The defendant had no knowledge of the contract between. Quimby and the plaintiff.

Quimby having three of the rakes in his possession, and representing himself as the owner of them, proposed to sell one of them to the defendant. At that time the defendant held a note for $22.60 against Quimby, which Quimby had previously given the defendant's father, John P. Blodgett, for board; and Quimby was also indebted to John P. Blodgett on account. The defendant told Quimby he would not buy a rake and pay money for it, but would allow him $30 for one, and give him up the. note for what was due on it, and give him credit on John P. Blodgett's account for the balance; to which Quimby agreed, and delivered a rake to the defendant. The note was not given up to Quimby, nor was any credit adjusted on the John P. Blodgett account then or afterwards, for the reason that at the time of the trade the defendant did not have the note or account with him; and Quimby agreed to meet him and adjust the, matter at some future time, which he neglected to do.

In September following, Quimby paid the plaintiff in notes and money for all the property which he had sold except the Blodgett rake, and $10 on some other trade; and he then told the plaintiff that he had sold a rake to the defendant for which he had not paid him, but was to pay in a few days, when he would pay the plaintiff the remaining $40; whereupon the plaintiff made this entry in his memorandum-book: "H. M. Quimby—balance on settlement $40.00." Two or three weeks later Quimby told the plaintiff that the defendant refused to pay him for the rake, and wanted to turn it on account; that he had refused to do so, and desired the plaintiff to collect it from Blodgett. A few days after this the plaintiff called on the defendant for pay for the rake, and the defendant said he had paid Quimby for it; upon which the plaintiff claimed that Quimby had no authority to make such a trade as the defendant had made with him, and that the rake was his property, and he should try and collect pay for it. Subsequently the plaintiff's attorney demanded pay for the rake, but neither the plaintiff nor any one for him ever demanded the specific property of the defendant.

The referee found that when the plaintiff made the entry " H. M. Quimby—balance on settlement $40.00," he did not intend to look to the defendant for pay for the rake, but intended to look to Quimby and hold him responsible for it. The plaintiff paid Stoddard & Co. for the rake before the commencement of this suit. The court granted the plaintiff leave to amend.

*Bingham & Aldrich*, for the defendant. It may be questionable whether the agent could sell and convey the rake in question, the price to be applied on his own indebtedness, and pass title; and the other questions raised being so clearly decisive. of the case in favor

of the defendant, we will not discuss that point, at the same time we do not waive it.

I. An undisclosed principal cannot repudiate so much of the unauthorized sale as relates to the application of payment made by his agent, and ratify so much thereof as relates to price. There was no contract for credit; there was no promise to pay—by the terms of the sale (which it is claimed was unauthorized) the article was paid for; and the undisclosed principal cannot, by ratifying one side of the transaction, create a privity between himself and the defendant as to a sale on credit. Story Agency, *s.* 250; *Webb* v. *Cole*, 20 N. H. 491.

II. But while a principal cannot create a contract between himself and a buyer, he may ratify an unauthorized transaction of his agent, and thereby bind himself and make the previous acts of the agent his own. Story Agency, *ss.* 252–260; *Cushman* v. *Loker*, 2 Mass. 105; *Hatch* v. *Taylor*, 10 N. H. 538; *Frank* v. *Jenkins*, 22 Ohio St. 597. The agent was to sell on credit, taking good notes running to Stoddard & Co., which were to be turned over to the plaintiff when obtained. The sale in question was in June, shortly after the agency commenced. In September, long after the business of the agency was at an end, the plaintiff and his agent met and had a settlement of all their business, and at this time the plaintiff knew that Quimby had sold or delivered the rake not taking good notes; and the plaintiff then and there made an adjustment of the claim by including it in a settlement with other items, and charged it to Quimby as so much due on settlement. Unquestionably he had the right so to do, and having acted in the premises, he thereby ratified the sale of the agent, or, in other words, waived whatever right he may have had, if any, to proceed against the buyer. The grounds for treating this as a waiver are much stronger in the case under consideration than in either of the cases cited; for the fact is found by the referee that "when the plaintiff made the entry on his book ('H. M. Quimby—balance on settlement $40.00'), he did not intend to look to the defendant for pay for the rake, but on the contrary did intend to hold Quimby responsible for the pay, and intended to look to him for it." This presents a stronger case of waiver than either of the cases cited; and it is for this reason that the element of intention is found as a fact, while in the cases cited the acts of the principal are held as a matter of law to operate as a waiver or ratification.

In *Frank* v. *Jenkins*, *supra*, the bringing of the suit against the agent was held as a ratification. In *Cushman* v. *Loker*, *supra*, the taking of the note was held, as a matter of law, to be a ratification of the claim against the party with whom the agent was dealing.

III. As to the count in trover, all that has been said regarding a waiver applies to this count as well, for if the plaintiff made a charge to his agent as the referee finds, intending to look to him

for pay, that would *ipso facto* operate as an extinguishment of all other rights of action for the value.

*T. F. Johnson*, for the plaintiff. The amendment, by adding a new count, was properly allowed to prevent gross injustice, as the case shows that the plaintiff was informed by his agent that the defendant wanted to set off the agent's debt, which was the cause of this action being commenced in assumpsit. The case also shows that Quimby's note was never delivered up, and no credit entered on the defendant's books; and the plaintiff had every reason to believe the referee would find it only an attempt to set off the agent's debt, as no claim was made by the defendant that Quimby applied the rake to his own debt until the time of trial, and long after Quimby had left the country.

The plaintiff had sufficient interest in the property to maintain this action when the defendant first received the same, for he was then responsible to Stoddard & Co. for its value, and "any person who is responsible over to his principal may maintain trover." 1 Chitty Pl. 170, and cases cited; *Hyde* v. *Noble*, 13 N. H. 494; 1 Smith Lead. Cas. 475, 476.

The plaintiff had a right to the immediate possession of the property as soon as the defendant received it; for when Quimby, who only had the right to sell, converted this rake to his own use by applying it on his debt, the plaintiff, his principal, to whom alone Quimby was responsible, became entitled to the immediate possession against every one claiming under Quimby. *Sanborn* v. *Colman*, 6 N. H. 14. But the special property, which the plaintiff all the time had, became absolute when the claim of Stoddard & Co. as security was extinguished by a payment for the rake several months before suit.

The memorandum upon the book cannot amount to a ratification of the trade made by Quimby, as the plaintiff could not ratify without full knowledge of all the facts. Story Agency, *ss.* 90, 210, 253; *Wright* v. *Boynton*, 37 N. H. 9; *Freeman* v. *Rosher*, 13 Q. B. 780; *Railway Co.* v. *Broom*, 6 Ex. 314; *Roe* v. *Railway Co.*, 7 Ex. 36; 1 Smith Lead. Cas. 472. At the time the plaintiff made that memorandum, as the case shows, he had no knowledge of the real nature of Quimby's transaction with the defendant, and only supposed that Quimby had sold the defendant a rake on credit, and then Quimby expressly agreed to remain the plaintiff's agent to collect and pay over the price; and the findings show conclusively that there was no understanding or intention to discharge the defendant. There was no acquiescence by the plaintiff, for, as soon as he learned of any intention to turn it on the agent's account, he gave the defendant immediate notice that no such application could be made; and there can be no acquiescence until there is full knowledge. The memorandum on the book cannot have the effect of a waiver, as it has none of the elements of the

same.  *Ripley* v. *Ins. Co.*, 30 N. Y. 136, 164; *Carpenter* v. *Cummings*, 40 N. H. 169; *Rice* v. *Chase*, 9 N. H. 179.

In all the cases cited by the defendant to make out a ratification, whatever the principals did was done with full knowledge of all the facts.  In the case *Cushman* v. *Loker*, 2 Mass. 105, the matter was adjusted with a full understanding of what the agent had done, and the agent gave a written promise to pay, while in this case the memorandum was made on the book without any knowledge by the plaintiff of the real nature of the transaction, and without the consent or knowledge of Quimby; and the statements made by Quimby at the time, and at their next meeting, show conclusively that he did not understand that he was responsible, or intend to be held, but merely to keep the real nature of the transaction from the plaintiff until he could leave the country (which he did), and then let the plaintiff and the defendant adjust the controversy as best they could.  The referee finds that Quimby informed the plaintiff that the defendant would not pay him, and that Quimby had refused to apply it on his debt, and that the plaintiff must collect that claim himself.

The plaintiff is entitled to judgment on the count in trover, as the defendant has wrongfully received his property and converted it to his own use, and there are none of the elements necessary to create an estoppel by which the owner may be deprived of his property without his consent.  *Barnard* v. *Campbell*, 55 N. Y. 456; *Nixon* v. *Brown*, 57 N. H. 39.  The plaintiff did not clothe his agent with any of the *indicia* of ownership, except possession; and that is not sufficient to protect even a *bona fide* purchaser. *Spraights* v. *Hawley*, 39 N. Y. 441.  The defendant parted with no property or thing of value for the rake, as he never delivered up the note, nor adjusted any credit on his books.  No demand and refusal were necessary.  *Farley* v. *Lincoln*, 51 N. H. 580, and cases cited; *Courtis* v. *Cane*, 32 Vt. 232; *Parsons* v. *Webb*, 8 Me. 38.

In all these cases it is held that where one purchases property from a person who has no right to sell, and retains the property, he is liable in trover without demand or notice.  One who receives another's property from a debtor to apply on his debt, who has no right so to apply it, can certainly stand in no better position than one who purchases, for a valuable consideration, from a person who has no right to sell.  The defendant received this rake from such a debtor, and claimed title to it when notified that Quimby had no right so to dispose of it, and had retained and claimed and used the same more than a year before this suit was brought, and has ever since so claimed, retained, and used the rake without expressing any willingness to return it.

*Bingham & Aldrich*, for the defendant, in reply.  I. There is no evidence, and the case does not show, that the defendant ever claimed to hold the property under a sale.  The plaintiff claimed

pay under contract; and the defendant declined to pay, saying he had paid Quimby. This does not bring the question within the rule of the cases cited in Morrison's Dig. 617, *s.* 12, as to demand and notice.

II. At the time this action was brought, the plaintiff had full knowledge of all the circumstances of the sale by Quimby to the defendant; and bringing an action in assumpsit under such circumstances, and going to trial, is an affirmance or ratification of the sale as made. Story Agency, *s.* 259, *n.* 1; *Smith* v. *Hodson,* 4 T. R. 211; 2 Smith Lead. Cas. (4th Am. ed.) 81–90, and cases cited; *Kynaston* v. *Crouch,* 14 M. & W. 266 and note; *Butler* v. *Hildreth,* 5 Met. 51; *Manufacturing Co.* v. *Searle,* 15 Pick. 225; *Partridge* v. *White,* 59 Me. 564; *Ham* v. *Boody,* 20 N. H. 411; *Ferguson* v. *Carrington,* 9 Barn. & Cress. 59; *Wilson* v. *Poulter,* 2 Str. 859.

III. The plaintiff had knowledge of the sale, and that the agent had disregarded his instructions and sold "not taking good notes or cash." It was at his election to proceed against this defendant, or the agent. He saw fit to elect the latter, and go into an accounting, and charge him the amount due on settlement; "and the election being once made, he must abide by it." *Eastman* v. *Coös Bank,* 1 N. H. 23, 27; *Brown* v. *Rundlett,* 15 N. H. 360; *Ousterhout* v. *Day,* 9 Johns. 114; *Farmer* v. *Davies,* 1 T. R. 108; *Garnham* v. *Bennett,* 2 Str. 816.

CLARK, J. Quimby, as the agent of the plaintiff, was authorized to sell the rakes upon certain conditions, but he had no authority to dispose of them in payment of his own debt. *Holton* v. *Smith,* 7 N. H. 446; *Parsons* v. *Webb,* 8 Me. 38; *Easton* v. *Clark,* 35 N. Y. 225; *Rice* v. *Glass Co.,* 60 N. H. 195. The transaction between Quimby and the defendant was not a sale, but a delivery of the rake in part payment of Quimby's indebtedness to the defendant. The defendant, in fact, paid nothing for it. The note which he held against Quimby was not delivered up, nor was any credit given on the J. F. Blodgett account, and the defendant was not a *bona fide* purchaser for a valuable consideration.

The making of the memorandum "H. M. Quimby—balance on settlement $40.00" by the plaintiff, was not a ratification of the delivery of the rake to the defendant in payment of Quimby's debt, nor was it a binding election to hold Quimby responsible for the price and release the defendant from liability, because it was not made with a full knowledge of the transaction. The plaintiff then understood that the rake had been sold to the defendant for $30, and that he was to pay for it in a few days. Neither was it evidence of a waiver or an estoppel, for the reason that there was no consideration to support a contract; and nothing was done, or omitted to be done, in consequence of it to create an estoppel. *Carpenter* v. *Cummings,* 40 N. H. 158, 169; *Rice* v. *Chase,* 9 N. H. 178; *White* v. *Phelps,* 12 N. H. 382.

As there was no sale of the rake, and no promise, express or implied, on the part of the defendant to pay for it, bringing an action for the price cannot operate as a ratification or affirmance of a contract that never was made by the agent. The plaintiff never having parted with his title to the property can maintain trover, and no previous demand is necessary to be shown. The unauthorized delivery of the rake, in payment of his own debt, by Quimby to the defendant was a conversion, and the defendant's possession was unlawful in its inception; and he acquired neither title nor the right of possession by receiving the property from one who had no authority to deliver it to him. Taking the property from Quimby, who had no right to transfer it, was a conversion. In *Hyde* v. *Noble*, 13 N. H. 494, it was held that a purchaser of property from one who has no power to sell, where the purchaser takes a delivery of it and retains the possession, claiming it under the sale, is a conversion of it. *Parsons* v. *Webb*, *supra*, was a case very similar to the one under consideration. In that case it appeared that the plaintiff had delivered his horse to R., his son-in-law, to sell for him, and that R. had turned out the horse in payment of a debt he owed G., who sold him to the defendant; and it was held that no demand was necessary. The doctrine of these cases is believed to be sound, and it is supported by authority. *Farley* v. *Lincoln*, 51 N. H. 577; *Moody* v. *Drown*, 58 N. H. 45; *Cooper* v. *Newman*, 45 N. H. 339; *Freeman* v. *Underwood*, 66 Me. 229; *Rodick* v. *Coburn*, 68 Me. 170; *Stanley* v. *Gaylord*, 1 Cush. 536; *Gilmore* v. *Newton*, 9 Allen 171.

The amendment, by filing a count in trover, was properly allowed. Bringing an action of assumpsit was not a conclusive election of remedy. *Connihan* v. *Thompson*, 111 Mass. 270, 272; *Butler* v. *Hildreth*, 5 Met. 49, 52.

*Case discharged.*

DOE, C. J., did not sit: the others concurred.